```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TENNESSEE
                         WESTERN DIVISION
```
_____

ALI ALMASRI,                          )
                                      )
     Plaintiff,                       )
                                      )
v.                                    )     No. 20-2863-SHL-tmp
                                      )
VALERO REFINING COMPANY –             )
TENNESSEE, LLC,                       )
                                      )
     Defendant.                       )
_____

                      **REPORT AND RECOMMENDATION**
_____

      On November 24, 2020, plaintiff Ali Almasri filed a *pro se* complaint against Valero Refining Company – Tennessee, LLC ("Valero"), seeking equitable relief and damages for claims of age and national origin discrimination in Valero's hiring process. (ECF No. 1.) Before the court is Valero's Motion for Summary Judgment, filed on January 3, 2022.[1] (ECF No. 26.) Almasri responded on January 25, 2022.[2] (ECF No. 30.) Valero replied on

---

[1] Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

[2] Almasri's filing was styled as a "Pro Se Motion for Summary Judgment" but seems to have been intended as a response to Valero's original motion. Almasri also previously filed a different "Pro Se Motion for Summary Judgment" after Valero's original motion was filed, but it was clear that motion was intended as a Motion for

February 2, 2022. (ECF No. 32.) Almasri filed a final sur-reply on February 8, 2022. (ECF No. 33.) For the below reasons, the undersigned recommends that Valero's Motion for Summary Judgment be granted.

## I.  PROPOSED FINDINGS OF FACT

In September 2019, Valero posted an online job announcement for twelve open Operator Trainee positions at their Memphis, Tennessee refinery. (ECF No. 26-2 at 2.)[3] This recruitment effort was overseen by Supervisor Refinery Human Resources employee Michael Sumter. (ECF No. 27-2 at 1.) The Operator Trainee position required a "high school diploma or GED." (ECF No. 27-6 at 1.) Prior refinery or chemical process operator experience, as well as an Associate's degree in process operations, was preferred. (Id.) Typical job duties included "performing visual rounds for [an] assigned area, assessing equipment operation, taking instrument readings," and generally making sure refinery equipment was

---

Extension of Time to File a Response. (ECF Nos. 28-29.)

[3]Almasri did not file a formal response to Valero's Statement of Undisputed Material Facts and did not comply with this district's local rules in any of his filings. This failure permits the court to take all of Valero's facts as undisputed for purposes of this motion. Fed. R. Civ. P. 56(e)(2); see also LR 56.1(d). However, Almasri's filings allege little additional factual information not already contained in Valero's Statement. The proposed findings of fact are largely drawn from Valero's Statement of Undisputed Material Facts, with Almasri's disagreements noted.

operating correctly. (Id.) Interested candidates were required "to complete a preliminary online job application by October 3, 2019." (ECF No. 26-2 at 2.) The preliminary application asked candidates to volunteer information about their race, gender, ethnicity, veteran status, and disability as required by federal regulations, but candidates were not forced to provide this information. (Id. at 3.) No questions about candidates' age or national origin were asked and candidates were not prompted to volunteer that information. (Id.) The application instead focused on "a number of pre-screening questions that [were] designed to assess whether [a candidate met] the minimum requirements and [were] willing to perform the essential functions of the position." (Id. at 2.) Candidates were asked if they would be willing to work outside in all weather conditions, if they would be able to stand for four hours continuously, if they would be able to lift and carry items weighing up to fifty pounds, and if they could twist and bend their body several times per day. (ECF No. 30-1 at 3-4.) Almasri, who was over forty years old and originally from Syria, completed this preliminary application on September 29, 2019, and "demonstrated to have the minimum qualifications." (ECF No. 26-2 at 4.)

    Valero's hiring process at this stage was largely automated. Upon completing the preliminary application, "each candidate receive[d] a computer-generated candidate identification (ID)

number" that was used as "the candidate's primary identifier in the application process up until the candidate appears for an in-person interview[.]" (Id. at 3.) Almasri was given the ID number "3126817" after completing the preliminary application, but his name was known to Valero at this point in the process. (ECF No. 27-7 at 2.) Of the 1,423 candidates who completed the preliminary application, 84 did not meet the minimum requirements and were removed from the process. (ECF No. 26-1 at 7.)

The remaining candidates all received an automated email on October 8, 2019, requesting that they take an online assessment test by October 12, 2019. (ECF No. 26-2 at 4.) Almasri did so and passed. (Id.) Those who passed "were invited to take an onsite skill assessment test on October 29, 2019." (ECF No. 26-2 at 4.) The email Almasri received inviting him to this assessment test told him to bring a "picture identification for check-in." (ECF No. 30-1 at 1.) Almasri contends Sumter checked his ID at this test and that this was when Valero learned of his age. (ECF No. 30 at 4.) Regardless, Almasri passed the assessment along with 289 remaining candidates, who were all sent an email inviting them to submit a "secondary online employment application[.]" (ECF No. 26-2 at 5.)

This secondary application required candidates to supply relevant past education and work experience. (Id.) The application

- 4 -

did not ask questions about a candidate's national origin or age. (Id.) Valero's Corporate Human Resources Department in San Antonio, Texas then created "blind resumes" for each candidate, which "contained only the applicants' computer-generated identification number, work experience and education." (ECF No. 27-2 at 2.) These blind resumes were then examined by a four-member resume review team, which consisted of "two Operations managers and two HR representatives" from the Memphis refinery. (ECF No. 26-2 at 6.) The two HR representatives were Sumter (ECF No. 27-2 at 2), and Holly Dickerson, an HR specialist. (ECF No. 27-1 at 2.) The team convened on November 11, 2019, with the goal of selecting seventy-three of the 289 applicants for in-person interviews. (ECF No. 26-2 at 7.)

Resumes were reviewed by each team member individually. Each member "was assigned a corner of the blind resume page where they were to indicate their decision on whether a candidate would advance to the interview phase[.]" (Id. at 6.) If a candidate received three "yeses" then they were extended an interview offer; if they received three "noes" they were rejected; and if they received tied results the Operations Director made the final call. (Id.) A candidate whose resume received three straight yeses or noes starting at the first review did not have their resume reviewed by the fourth team member. (Id. at 7.) Almasri's blind

- 5 -

resume listed his ID number, his Bachelor's Degree in Petrochemical Engineering from Albaath University, his Master's Degree in Chemical Engineering from the University of Pittsburgh, and his nine years of prior work experience at Montgomery Oil Company as a Service Engineer.[4] (ECF No. 27-5.) This prior job largely involved servicing gas stations. (Id.) Almasri's resume received three noes; Dickerson did not review it since she was the fourth member in the order.[5] (Id.) Sumter explained his decision as follows:

> I did not select Plaintiff's blind resume for interview because it showed no manufacturing or industry experience or growth in his prior employment during which he remained in the same position for the entire nine-year tenure. There was no discussion regarding age or national origin of any of the applicants during the resume review process because that information was neither available to the members of the resume review team nor relevant to our selection decision.

---

[4]Both parties attached a scanned copy of the exact blind resume reviewed, including notations by the resume review team members.

[5]Almasri heavily focuses on the testimony of Valero employee James Griggs, who stated in his deposition that the resume review "starts with the human resources person and then it goes to the two operations management persons involved." (ECF No. 30-1 at 9.) Since Dickerson was an HR specialist and did not review the resume, it is possible that Griggs misunderstood or misstated the process used at this review, but also possible Griggs meant to refer to Sumter when stating that "the human resources person" reviews the resumes first. (Id.)

(ECF No. 27-2 at 2-3.) Two other team members (only identified by the initials "BN" and "SB") agreed and Almasri's resume was rejected. (ECF No. 27-5.) Almasri disagrees with this version of events, stating that Sumter and Dickerson must have known the resume referred to him, checked his ID, noted his age as fifty-nine, inferred his national origin from his first name, and rejected him for those reasons. (ECF No. 30 at 4.) Ultimately, thirteen Operator Trainees were hired, less than one percent of the initial applicant pool.[6] (ECF No. 26-1 at 11.) Of those hired, six were forty years old or older, and the oldest was fifty-five. (Id.)

Almasri received news of his rejection on December 2, 2019. (ECF No. 26-2 at 8.) He filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 9, 2020, and received a right to sue letter on September 25, 2020. (ECF No. 1 at 5.) He filed the present case on November 24, 2020, seeking damages from and employment by Valero. (Id. at 6.)

II. **PROPOSED CONCLUSIONS OF LAW**

**A. Standard of Review**

---

[6]The Memphis Refinery received permission for one additional operator position after interviews were conducted. (ECF No. 26-1 at 5.)

- 7 -

Federal Rule of Civil Procedure 56(a) provides that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden to "demonstrate the absence of a genuine [dispute] of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir. 1991).

The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims they assert. Banks v. Wolfe Cty. Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003). Conclusory allegations, speculation, and unsubstantiated assertions are not evidence and are not sufficient to defeat a well-supported motion for summary judgment. See Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Similarly, a court may not consider inadmissible, unsworn hearsay in deciding a motion for summary judgment. Tranter v. Orick, 460 F. App'x 513,

514 (6th Cir. 2012). In order to defeat summary judgment, the party opposing the motion must present affirmative evidence to support its position; a mere "scintilla of evidence" is insufficient. Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252). "In making this assessment, [the court] must view all evidence in the light most favorable to the nonmoving party." McKay v. Federspiel, 823 F.3d 862, 866 (6th Cir. 2016). These standards apply regardless of a party's *pro se* status; "the liberal pleading standard for *pro se* parties is 'inapplicable' 'once a case has progressed to the summary judgment stage.'" George v. Whitmer, No. 20-12579, 2021 WL 1976314, at *2 (E.D. Mich. May 18, 2021) (quoting Tucker v. Union of Needletrades, Indus., & Textile Employees, 407 F.3d 784, 788 (6th Cir. 2005)). A *pro se* party's opposition to a motion for summary judgment cannot rely on "mere allegations and unsworn filings" but must instead "set out specific facts showing a genuine issue for trial through affidavits or otherwise" just like any other response. Id. (citing Viergutz v. Lucent Techs., Inc., 375 F. App'x 482, 485 (6th Cir. 2010)).

  Almasri makes two separate claims of discrimination. First, he argues that he was not hired by Valero due to his national origin (Syrian) in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Second, he argues that he was not hired by

Valero due to his age (fifty-nine years old at the time he applied) in violation of the Age Discrimination in Employment Act ("ADEA").

**B.   Title VII National Origin Discrimination Claims**

Plaintiffs may attempt to prove Title VII discrimination claims in one of two ways. First, they may advance direct evidence of discrimination, or evidence that "if believed, *requires* the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Kostic v. United Parcel Serv., Inc., 532 F. Supp. 3d 513, 527 (M.D. Tenn. 2021) (emphasis added). Direct evidence includes, among other things, blatant discriminatory statements of intent to take adverse actions against the plaintiff. See, e.g., Brewer v. New Era, Inc., 564 F. App'x 834, 839 (6th Cir. 2014) (direct evidence of discrimination where a decisionmaker declared plaintiffs were "too old" and "needed to retire"). In cases where the plaintiff produces direct evidence of discrimination, the burden is shifted to the defendants to prove that they would have taken the same actions "even if [they] had not been motivated by impermissible discrimination." Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000).

Almasri does not present direct evidence but instead relies on circumstantial evidence of discrimination. "Circumstantial evidence . . . is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a

reasonable inference that discrimination occurred." White v. Baxter Healthcare Corp, 553 F.3d 381, 391 n.5 (6th Cir. 2008) (citing Kline v. Tenn. Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997)). Where only circumstantial evidence exists, courts use the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to evaluate claims. In a failure to hire claim like Almasri's, this test is slightly modified. The plaintiff must show that "(1) he is a member of a protected class, (2) he applied for and did not receive the job at issue, (3) he was qualified for the job, and (4) similarly situated persons not in his class received the job for which he applied." Overall v. RadioShack Corp., 202 F. App'x 865, 868 (6th Cir. 2006) (citing Anthony v. BTR Auto. Sealing Sys., Inc., 339 F.3d 506, 514 (6th Cir. 2003)). In a failure to hire claim, the fourth element can be modified if the position is still open, requiring the plaintiff to show that "the employer continued to seek applications from persons of the prospective employee's qualifications." Bey v. FCA US LLC, No. 19-10521, 2019 WL 5849367, at *4 (E.D. Mich. Oct. 15, 2019) (citing Birch v. Cuyahoga Cty. Prob. Court, 392 F.3d 151, 166 n.12 (6th Cir. 2004)). Making a *prima facie* case "is a burden easily met" by the plaintiff, after which the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason for the adverse action." Wheat v. Fifth Third Bank, 785 F.3d 230,

237 (6th Cir. 2015). If the defendant can do so, the plaintiff then must prove that the reasons provided were "mere pretexts for prohibited discrimination." Id. (citing Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981)).

Valero does not contest the first three elements of the *prima facie* case but does assert that Almasri "has presented no evidence establishing that he was treated differently from other candidates who are not from Syria." (ECF No. 26-1 at 15.) Their argument rests largely on the idea that "throughout the application process, at no time did Plaintiff disclose his national origin (i.e. Syrian) to anyone at Valero" and "at no time was he required to answer a question regarding his national origin." (Id.) There is some question whether a plaintiff, in order to make a *prima facie* case, must show that an employer knew of a plaintiff's membership in a protected class. See e.g., Deger v. Univ. of Cincinnati, No. 1:14-cv-420, 2015 WL 5729324, at *8 (S.D. Ohio Sept. 30, 2015) ("Defendants cite no case law indicating that knowledge is an element of the prima facie case under Title VII."). The Sixth Circuit has not explicitly imposed a "knowledge requirement" at the *prima facie* case stage of a Title VII claim except in the context of pregnancy discrimination. Prebilich-Holland v. Gaylord Entertainment Co., 297 F.3d 438, 444 (6th Cir. 2002) ("in order to establish the fourth prong of a prima facie case of pregnancy

- 12 -

discrimination . . . the employee bears the burden of demonstrating that the employer had actual knowledge of her pregnancy"). Other circuits have imposed a knowledge requirement at the *prima facie* case stage beyond pregnancy discrimination cases. See Toronka v. Cont'l Airlines, Inc., 411 F. App'x 719, 723 n.2 (5th Cir. 2011) (knowledge requirement for any claim "based on a protected status of which the employer would not obviously be aware, as is, for example, sometimes the case with religion or national origin"); Woodman v. WWOR-TV, Inc., 411 F.3d 69, 82-83 (2d Cir. 2005) (agreeing to "join our sister circuits in concluding that a defendant's discriminatory intent cannot be inferred, even at the *prima facie* stage, from circumstances unknown to the defendant."); Lubetski v. Applied Card Sys., Inc., 296 F.3d 1301, 1305 (11th Cir. 2002) ("a *prima facie* case is established if the plaintiff demonstrates the challenged employment decision was made by someone who was aware of the plaintiff's religion."); Geraci v. Moody-Tottrup, Int'l, Inc., 82 F.3d 578 (3d Cir. 1996) (knowledge requirement for pregnancy claims); Robinson v. Adams, 847 F.2d 1315, 1316 (9th Cir. 1987) (*prima facie* elements "would not rationally create [the] inference [of discrimination] if, as here, a plaintiff offers proof that he is Black, but there is no showing by direct or indirect evidence that the decision-maker knew this fact."). But the court need not resolve this question here, because

neither party has presented any evidence regarding the national origin of any of the thirteen Operator Trainees who were ultimately hired, let alone the seventy-three who were interviewed. (ECF No. 27-4 at 12) (Q: "Are you saying you're not claiming that Valero has selected others to hire that are from a different national origin? Is that not part of your claim?" A: ". . . I don't know yet - - I said I don't know yet, and I have been repeating that, who has been hired. I don't know.") Without this evidence, Almasri cannot establish that "similarly situated persons not in his class received the job for which he applied." Overall, 202 F. App'x at 868. He has failed to make a *prima facie* case.

Even if he had, Valero has met their burden of articulating a legitimate, non-discriminatory reason for not interviewing and hiring Almasri: his experience was not in relevant fields and he had remained stagnant in his previous job for nine years. (ECF No. 26-2 at 7-8.) Thus, Almasri must show that this proffered reason "(1) had no basis in fact, (2) was not the actual reason for the [adverse action], or (3) was insufficient to explain it." Igwe v. Salvation Army, 790 F. App'x 28, 34 (6th Cir. 2019) (citing Imwalle v. Reliance Med. Prods. Inc., 515 F.3d 531, 545 (6th Cir. 2008)). He has not done so. Almasri's background is in chemical engineering and his previous job involved repairing and maintaining gas stations, not operating oil refineries. Absent additional

evidence, "[Almasri's] subjective view of [his] qualifications in relation to those of other applicants, without more, cannot sustain a claim of discrimination." Hedrick v. W. Reserve Care Sys., 355 F.3d 444, 462 (6th Cir. 2004). Almasri has only provided "mere personal beliefs, conjecture, and speculation [which] are insufficient to support an inference of discrimination." Grizzell v. City of Columbus Div. of Police, 461 F.3d 711, 724 (6th Cir. 2006) (quoting Woythal v. Tex-Tenn Corp., 112 F.3d 243, 247 (6th Cir. 1997)). Almasri speculates the sworn affidavits describing Valero's decision not to interview him "claim[] falsely that they don't know [his] age and [his] origin from [his] full name Ali Mahmoud Almasri," but provides no evidence for these claims beyond asserting that Sumter had previously seen his photo ID roughly two weeks before the resume review. (ECF No. 30 at 3.) Instead, evidence shows that the blind resume reviewed did not state Almasri's name at all, and even if Sumter had previously seen Almasri's photo ID, there is no evidence that Sumter connected that ID to the blind resume he reviewed. (ECF No. 27-5.) Without more, Almasri cannot show that Valero's reasons for not interviewing him were false, fake, or insufficient to motivate their actions. Without more, there are no "justifiable inferences" that the court may make in his favor. Grizzell, 461 F.3d at 718-19 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

Case 2:20-cv-02863-SHL-tmp   Document 34   Filed 02/18/22   Page 16 of 20
                               PageID 261

U.S. 574, 587 (1986)). Almasri has not shown a genuine issue of material fact on whether he was discriminated against on the basis of his national origin.

**C.   ADEA Claims**

"Claims of employment discrimination brought pursuant to Title VII and the ADEA are governed by the same familiar, burden-shifting framework." Marshall v. Summa Health Sys. Hosps., 66 F. App'x 598, 599 (6th Cir. 2003). The rules discussed above regarding *prima facie* cases, pretext, and burdens largely apply to ADEA claims as well, and Almasri again relies solely on circumstantial evidence. Thus, Almasri must first demonstrate a *prima facie* case of age discrimination with circumstantial evidence by showing that he was "1) at least forty years old at the time of the alleged discriminatory act; 2) subject to an adverse employment action; 3) otherwise qualified for the position; and 4) rejected in favor of a substantially younger person." Johnson v. Lockheed Martin Corp., 598 F. App'x 364, 368 (6th Cir. 2015) (citing Harris v. Metro. Gov't of Nashville & Davidson Cty., Tenn., 594 F.3d 476, 485 (6th Cir. 2010)). Those who are "six years younger than the plaintiff" are "substantially younger." Id. (citing Grosjean v. First Energy Corp., 349 F.3d 332, 340 (6th Cir. 2003)).

Once again, Valero does not dispute the first three elements of the *prima facie* case but instead argues that Almasri "has no

- 16 -

evidence showing that he was not interviewed in favor of a substantially younger candidate[.]" (ECF No. 26-1 at 17.) Valero points to the fact that "six of the thirteen Operator Trainees hired by Valero were forty years of age or older and the oldest was fifty-five." (Id.) By implication, then, seven of the thirteen Operator Trainees hired were under forty years old. If this case involved only one open position, and that position had been filled by a fifty-five-year-old, then Almasri would be unable to make a *prima facie* case. However, this case involves "multiple hires for the same position," and the Sixth Circuit has previously declined to hold that plaintiffs cannot establish a *prima facie* case of age discrimination "when the employer hires at least one person older or not substantially younger than each plaintiff for the positions for which they applied."[7] Johnson, 598 F. App'x at 368 n.1. Thus, since over half of those hired were younger than Almasri and under forty years old, the undersigned finds Almasri has made a *prima facie* case for purposes of this motion.

Valero offers the same legitimate, non-discriminatory reason for not hiring Almasri as they did above: his experience was in a

---

[7]The Sixth Circuit declined to adopt this position due to prior cases holding that "employers cannot escape liability for discrimination simply because they did not discriminate against every member of a protected class in their employment decision." Johnson, 598 F. App'x at 368 n.1 (citing Connecticut v. Teal, 457 U.S. 440 (1982) and Grizzell, 461 F.3d 711).

different field and he had not advanced at his previous company despite working there for nine years. To survive summary judgment Almasri must present enough evidence to create a genuine issue of material fact over whether this reason: (1) had no basis in fact; (2) did not actually motivate the adverse actions, or (3) was insufficient to warrant the adverse actions. Sharp v. Aker Plant Servs. Grp., Inc., 600 F. App'x 337, 344 (6th Cir. 2015).

Valero states that they did not know of Almasri's age until they "received the EEOC charge." (ECF No. 26-1 at 17.) Sumter's affidavit states that "there was no discussion regarding age . . . because that information was neither available to members of the resume review team nor relevant to our selection decision." (ECF No. 27-2 at 3.) The blind resume that the hiring team reviewed did not list Almasri's age. (ECF No. 27-5.) For his part, Almasri focuses on the fact that Sumter saw his photo ID, which listed his birthday, when he took the onsite skill assessment test. (ECF No. 30 at 2.) Almasri also claims that "the job screening requirements from question 9 – 17," which largely relate to the job's physical demands, and the "GED with no experience requirement" are both veiled methods of weeding out older candidates. (Id. at 2-3.) He further claims that Valero's marketing only shows younger people and that an internal training video showed an older employee

getting into an accident, "making it [look] like accidents only will happened [sic] more often with older worker." (Id. at 3.)

Simply put, Almasri's argument again amounts solely to "speculation [which] [is] insufficient to support an inference of discrimination." Grizzell, 461 F.3d at 724. Assuming that Sumter did see Almasri's photo ID and remembered the birthday listed, there was no way for him to tie that photo ID and birthday to the blind resume he reviewed and rejected. (ECF No. 27-5 at 1.) Almasri presents no law establishing that the ages of models and actors in promotional or internal training materials can serve as circumstantial evidence of age discrimination. His argument that the questions regarding physical and educational qualifications on the preliminary application are merely masked questions about age is nothing more than a pretext argument without evidence. Without evidence that the qualifications are irrelevant, fake, or insufficient to reject a candidate, Almasri has not created a genuine dispute of material fact over whether these questions are meant to discern if a candidate meets the minimum qualifications for the job, as Valero claims they seek to do. In sum, he not shown a genuine issue of material fact on whether he was discriminated against on the basis of his national origin.

### III. RECOMMENDATION

Based on the above, the undersigned recommends that the Motion for Summary Judgment be granted.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

February 18, 2022
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**